

**SO ORDERED.**

**SIGNED this 05 day of December, 2006.**

JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re: )
)
CHARLES MACK WILSON and )
JONELL ELIZABETH WILSON, ) Case No. 06-40637
) Chapter 13
Debtors. )
_____)

**MEMORANDUM OPINION AND ORDER SUSTAINING
OBJECTIONS TO DEBTORS' CHAPTER 13 PLAN**

This matter is before the Court on the Objections to Confirmation of Debtors' Chapter 13 Plan filed by WSF Financial[1] and by HSBC Auto Finance Department,[2] respectively. Both objections contend that Debtors' Chapter 13 plan does not comply with the requirements of 11 U.S.C. § 1325(a) that deal with debts incurred within 910 days of the

---

[1]Doc. 13.

[2]Doc. 16.

filing of the bankruptcy petition for the acquisition of automobiles for the personal use of debtors. The Court has now heard the evidence and is ready to rule.

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (L). Because Debtors filed their bankruptcy petition on July 17, 2006, the case is governed by the Bankruptcy Code, as modified by the provisions of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA).[3]

## I. FINDINGS OF FACT

Debtors purchased a 2000 Ford Expedition, with 42,086 miles, on July 2, 2004; financing was provided by WFS Financial. About a month later, on August 5, 2004, they purchased a 2000 Dodge pickup, with unknown mileage. HSBC financed this purchase. Both vehicles were thus acquired within 910 days of filing bankruptcy, and both can seat at least six people.

Although Debtors do not recall checking the box in Paragraph 15 of each Retail Installment Agreement, which they both admittedly signed, stating that each vehicle was purchased primarily for "personal and family purposes," the box is checked on both contracts.[4] Someone has hand-written in that paragraph, on a line allowed for that purpose, that the collateral will be located at "same"—which this Court assumes to mean Debtors'

---

[3] All future statutory references are thus to the BAPCPA, 11 U.S.C. §§ 101-1532 (2005), unless otherwise specifically noted.

[4] The other two available (here, unchecked) boxes indicate the collateral is acquired for "business" purposes or "farming operations."

2

home address. The word "same," which appears immediately after the purpose of acquisition, is the only hand-written word (except for signatures) on the second page of the document, and thus does serve to emphasize the contents of this paragraph over others on that page.

Debtors selected these vehicles, at least in part, because they were, and continue to serve as, foster parents for three or four children at a time,[5] and as parents to one biological child, and needed the larger vehicles to simultaneously transport some or all of these children. Debtors knew these vehicles would be used, and they have been regularly used, to transport Debtors and their foster children (and biological child) to and from school, church, doctors appointments, out to dinner, the grocery store, and other family related activities. Debtors also use the vehicles for purely personal reasons, such as for shopping errands and "to relax" when the foster children are at school. In addition, Ms. Wilson was employed outside the home when they acquired the 2004 Expedition, and she drove it to and from work until she left that job.

Debtors' Chapter 13 plan proposes to pay only the current value of both vehicles, rather than the full amount of the remaining debt. In both instances, the current value is considerably less than the balance due.[6] They base this plan provision on their contention

---

[5]Debtors' Schedule I shows, at time of filing, that three foster children were then residing with them.

[6]The Plan suggests HSBC Auto Finance has a claim of $13,777, but that the estimated value of the pickup is only $5,280. Similarly, the Plan suggests WFS Financial has a claim of $17,446 on the Expedition, but that its value is only $9,415. These vehicles, which were 4-model years old when acquired, were purchased for $15,440 and $20,669, respectively. Accordingly, the Plan suggests the truck has further depreciated by 65%, and the Expedition by almost 55%, in the two years since purchase. Neither HSBC Auto Finance nor WFS Financial disputed the plan values, in the event the Court ruled in favor of Debtors.

3

that both vehicles were purchased for "business use," and thus do not fit within the hanging paragraph in § 1325(a) that controls vehicles "acquired for the personal use of the debtor." Conversely, both HSBC and WFS Financial contend that the vehicles were acquired for Debtors' personal use, and that the BAPCPA amendments to § 1325(a) require Debtors to provide full payment of their claims. Additional facts will be discussed below, when necessary.

## II.  CONCLUSIONS OF LAW

As this Court previously discussed in *In re Lowder*,[7] and again in *In re Bolze*,[8] the BAPCPA opted to differentiate between the plan treatment required for creditors who loaned money for a debtor to purchase a motor vehicle, for personal use, within 910 days preceding the filing date, and other creditors. It did so by inserting an unnumbered paragraph at the end of § 1325(a)(9). That paragraph appears not to be a part of—or even related to, subsection (9) (which conditions confirmation on debtor's compliance with the duty to file required tax returns), but instead appears related to § 1325(a)(5).

The hanging paragraph states, in pertinent part, as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor

---

[7] 2006 WL 1794737 (Bankr. D. Kan. June 28, 2006).

[8] 2006 Bankr. LEXIS 2027, Case No. 06-40036 (Bankr. D. Kan. August 31, 2006) (holding that van purchased for primary use by debtor's non-filing spouse, but in which Debtor rode and drove frequently, because it was only vehicle big enough for entire family to ride together, was acquired for personal use of debtor. Court also holds that personal, family and household use are overlapping concepts).

4

vehicle (as defined in Section 30102 of title 49) acquired for the personal use of the debtor...."

The applicable subsection of § 506 is § 506(a)(1), which provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...."

Accordingly, the language contained within the hanging paragraph makes the value of the collateral irrelevant in determining the allowed amount of a claim secured by a purchase money security interest in a vehicle acquired within 910 days of the bankruptcy filing for the personal use of the debtor. And unless the amount of the claim is subject to reduction for reasons other than collateral value, the creditor's allowed secured claim is fixed at the amount of the underlying debt under nonbankruptcy law.[9]

The issue in this case is whether these Debtors acquired the two vehicles for their "personal use" as that term is used in § 1325(a). In *In re Lowder*, the Court addressed the issue of what constitutes "personal use" in the context of the hanging paragraph, as follows:

> The Court finds the approach taken by the *Runski* court persuasive in deciding how this Court should interpret the term "personal use" in § 1325(a). When a debtor can establish that a vehicle has been acquired for business purposes, the hanging paragraph in § 1325(a) will not apply. That debtor will be able to bifurcate the claim into a secured and unsecured portion and pay only the value of the vehicle, with interest. Conversely, when the evidence

---

[9]*In re Ezell*, 338 B.R. 330, 340 (Bankr. E.D. Tenn. 2006) (generally holding that if debtor elects to surrender vehicle obtained within 910 days of filing bankruptcy, surrender is deemed to fully satisfy creditor's claim because anti-cramdown provision works both ways, and thus creditor retains no deficiency to assert as an unsecured claim). *See also In re Vega*, 344 B.R. 616 (Bankr. D. Kan. 2006), where this Court held the secured claim had to be reduced to equal the purchase money portion of the note remaining due on collateral acquired within 910 days of the filing; amount used to refinance another vehicle acquired more than 910 days before filing was not purchase money.

5

shows that a vehicle was acquired for non-business, or the "personal," use of the debtor, bifurcation is impermissible.[10]

The Court also recognized in *In re Lowder* that there would undoubtedly be fact patterns where a vehicle was used in part for business, and in part for personal, purposes, but was not required under the facts of that case to decide whether those vehicles would fall within the confines of the hanging paragraph in § 1325(a). That issue is now presented in this case, because Debtors claim that the vehicles were acquired both for a business purpose (operating a foster care home) and for personal use. They further claim they would not have bought vehicles with as much seating capacity if they were only purchasing them for personal use.

Judge Steen in the Southern District of Texas recently ruled on the issue of how much personal use is required for a vehicle to fall under the hanging paragraph in § 1325(a), in *In re Solis*.[11] Judge Steen held:

> The Court agrees with the almost universal conclusion that "personal" implies "non-business." Therefore the Court would agree with *Lowder*'s interpretation of *Runski:* that a vehicle acquired exclusively for business use is not a vehicle acquired for personal use. But, just as there is no bright or gray line for the Court to use when comparing proportionate use by a debtor and use by a nondebtor, there is no guidance in the statute concerning what percentage of business use (less than 100%) would disqualify the vehicle as a 910 Vehicle. The words "solely," "exclusively," "mostly," "primarily," "partially" or any other type of quantitative requirement do not appear in the hanging paragraph in this context, either. Having no guidance from the statute, the Court will adopt its best estimate of a reasonable conclusion. The Court will determine that the "personal use" requirement of the statute is satisfied if the personal use

---

[10]*Lowder*, 2006 WL 1794737 at *4, citing *Cypher Chiropractic Center v. Runski (In re Runski),* 102 F.3d 744 (4th Cir. 1996).

[11]___ B.R. ___, 2006 WL 3298351 (Bankr. S.D. Tex., November 14, 2006).

6

of the debtor is significant and material, regardless of whether there is also some business use.[12]

The Court agrees that Judge Solis has "best estimated" what Congress would have reasonably concluded, when faced with this fact pattern, and thus adopts his "significant and material" test to determine whether a vehicle was acquired for the personal use of a debtor.

Having adopted the "significant and material" test established in *In re Solis*, the Court now turns to the facts of this case to determine whether Debtors acquired these vehicles with the intent that they would be significantly and materially used for personal purposes.[13] There is no question the vehicles are used, in part, for functions related solely to the foster children placed in Debtors' home, such as driving those children to school and doctor appointments. However, the vehicles are also used significantly for personal purposes, as well, such as driving to church as a blended family, for personal shopping, for their biological child's school and other activities, to "relax" when the foster children are in school, and presumably for Debtors' own doctor and other appointments. In addition, at the time the Ford was purchased, it was also used by Ms. Wilson to drive to and from her then workplace, which this Court has previously held constitutes personal use under the *Lowder* facts.[14]

---

[12]*Id.* at *6.

[13]The Court also agrees with the observation, in *In re Solis,* 2006 WL 3298351, *6, that "Although the jurisprudence sometimes discusses how the vehicle "is used" rather than discussing the purpose for which it was acquired, the loose language in many cases can be attributed to lax evidentiary presentations, to the fact that in most cases there is probably no difference between intended use and subsequent actual use, and to the fact that the courts are judging credibility of testimony about intended use by observing actual use."

[14]*Lowder*, 2006 WL 1794737 at *4  The Court also notes with interest the decision in *In re White*, 2006 WL 2827321 (Bankr. E. D. La. 2006) (declining to find that Congress intended to adopt Internal Revenue guidelines dealing with business use of automobiles in interpreting § 1325(a)). *In re White* states that "Under Federal law, Internal Revenue Service guidelines provide that vehicles used for transportation to and from work are not business property and therefore

7

Creditor WFS Financial also argues that further proof that Debtors acquired the Expedition for personal use, and not business use, can be found in the contractual language of the extended warranty signed by Ms. Wilson. That warranty is specifically subject to cancellation if the vehicle is used for certain purposes, including "business, deliveries, construction, or commercial hauling." WFS argues that if Debtors were purchasing this car for business use, they would not have purchased this warranty, because it would be immediately voided. WFS also infers this evidence refutes Debtors' allegation that the sales representatives knew they were buying these cars for use in their "foster care business."

Similarly, each creditor points to the fact that their respective contracts, signed by both Debtors, expressly indicate each purchase was for personal, and not for business (or farming), purposes. Although the Court does not find either piece of evidence conclusive of Debtors' intent at the time of acquisition, both because these Debtors deny they read these provisions and because this Court is well aware that many consumers do not read the fine print in these contracts, the evidence does tend to support such a finding, and is one of many factors to be considered by this Court.[15]

The personal use of these vehicles was neither inconsequential nor immaterial to Debtors' daily lives. These two vehicles were routinely used for personal activities, some

---

expenses associated with their purchase and maintenance are not deductible as business expenses for tax purposes, citing 26 C.F.R. § 1.261-1(b)(5)(a)." *Id.* at *4. It is an interesting question, given Congress' reliance on Internal Revenue Service guidelines for implementation of the means test under § 707(b), whether Congress also intended to rely on IRS guidelines to determine "personal" versus "business" use in the context of § 1325(a).

[15]*See In re Jackson*, 338 B.R. 923 (Bankr. M.D. Ga. 2006) (holding that debtor's statement in retail sales agreement that vehicle purchased for "personal, family, or household use" was not dispositive for creditor).

8

of which included the foster children in their home (e.g., taking them to church and out to eat for family dinners), and some of which did not (e.g., to "relax" and for Ms. Wilson's other employment). The Court thus finds that these vehicles were acquired for their personal use, and that any confirmable plan must provide for the repayment of the purchase money obligation, plus interest.[16]

### III. CONCLUSION

The Court finds that the hanging paragraph in 11 U.S.C. § 1325(a) applies to the purchase of both vehicles because each claim is secured by a purchase money security interest, each debt was incurred within 910 days of filing of the bankruptcy case, the collateral in each case is a motor vehicle, and because upon acquisition, Debtors intended that a significant and material portion of their use of both the Dodge pickup and the Ford Expedition would be for the personal use and benefit of both Debtors. Based on these findings, the Court finds the hanging paragraph in § 1325(a) applies, and Debtors' plan cannot be confirmed as filed.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Objections to Confirmation of Debtors' Chapter 13 Plan filed by WSF Financial (Doc. 13) and by HSBC Auto Finance Department (Doc. 16) are sustained.

**IT IS FURTHER ORDERED** that the Debtors file an amended Chapter 13 plan, if they can propound a feasible plan in light of their income and expenses, within 30 days of

---

[16] Again, this Court previously held in *In re Lowder* that Chapter 13 plans, even for 910 vehicles, must provide interest calculated under *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004) (rejecting the use of the contract rate of interest to satisfy the present value requirement in a Chapter 13 plan).

the date this decision, and also provide notice with an appropriate objection deadline. Failure to file and notice such a plan by that date may constitute unreasonable delay, and provide a basis for dismissal under 11 U.S.C. § 1307(c)(1), if such amendment is not timely filed. The confirmation hearing scheduled for December 20, 2006 will be continued to the **January 24, 2007 docket, at 1:30 p.m.**

# # #

10